## S95A1091. DERRER v. ANTHONY.
### (463 SE2d 690)

HINES, Justice.

Derrer, Warden of Hall County Correctional Institution, appeals the grant of Anthony's petition for writ of habeas corpus.[1]

---

[1] On May 30, 1994, Anthony was arrested pursuant to an outstanding warrant for a pre-

On October 9, 1986, Anthony pled guilty to aggravated assault and received a sentence of three years to be served in confinement. While serving this sentence in the Jackson Diagnostic Center, he was placed in the custody of the Fulton County Sheriff to respond to a pending theft charge. On July 23, 1987, Anthony pled guilty to the theft charge and received a sentence of ten years, three to be served in confinement followed by seven to be served on probation. This latter sentence was to run concurrently with the sentence he was then serving.

On July 24, 1987, the Parole Board commuted Anthony's aggravated assault sentence to time served and erroneously released him from state custody on August 4, 1987, after having served only 12 days of his sentence for theft. Anthony remained free until May 30, 1994, when he was arrested by Fulton County authorities after an identification check revealed an outstanding warrant regarding his 1987 theft sentence. He was returned to the Jackson Diagnostic Center, and eventually transported to the Hall County Correctional Institution for the purpose of serving the confinement portion of his 1987 theft sentence. Anthony filed a petition for writ of habeas corpus, alleging violation of his due process rights under the Fourteenth Amendment by requiring him to serve his sentence in installments. The habeas court granted the relief sought in the petition and ordered the Department of Corrections to immediately release Anthony from its custody.

1. The Warden contends that the habeas court erred by not dismissing Anthony's petition for failure to state a claim upon which relief could be granted. The Warden maintains that even if the confinement portion of Anthony's 1987 theft sentence may have ended in 1990 were it not for his release, Anthony is still under sentence until July 1997 when his ten-year sentence expires. Title 9, Chapter 14, Article II of the Official Code of Georgia Annotated affords the exclusive procedure for seeking a writ of habeas corpus for persons whose liberty is being restrained by virtue of a sentence imposed against them by a state court of record. OCGA § 9-14-41. OCGA § 9-14-42 (a) limits those who may institute habeas proceedings under Article II to anyone:

who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state. . . .

vious theft conviction. He filed this habeas action on October 19, 1994. The habeas court held a hearing on February 15, 1995, and granted Anthony's petition on March 9, 1995. Derrer filed a notice of appeal on March 15, 1995. The case was docketed in this Court on April 7, 1995, and was submitted for decision without oral argument on May 29, 1995.

The Warden contends that Anthony's petition should have been dismissed for failure to state a claim because it does not challenge his guilty plea on constitutional grounds. The contention fails.

The habeas court determined that "Anthony was released through no fault of his own," and that "his sentence would have expired in 1990." In the context of its written order, the habeas court's determination was that the confinement portion of Anthony's sentence would have expired in 1990. Factual determinations made by the habeas court will be upheld unless clearly erroneous. *Berryhill v. Ricketts*, 242 Ga. 447 (249 SE2d 197) (1978).

Once the confinement portion of a defendant's sentence is served, and he begins serving the probated portion of the sentence, he is entitled to a hearing before the State may revoke his probation and require him to serve his originally imposed probationary sentence in confinement. See OCGA § 42-8-34.1. Thus, had Anthony remained incarcerated pursuant to the 1987 theft sentence until the commencement of his probationary period in July 1990, he would have been entitled to a hearing before the State could have required him to serve his probationary sentence in confinement. If his probation was then revoked after a hearing, Anthony could have filed a petition for writ of habeas corpus asserting violations of his constitutional rights "in the proceedings which resulted in his conviction," the 1987 guilty plea for theft, as well as in the proceedings which resulted in his subsequent incarceration, the probation revocation hearing. See OCGA § 9-14-42. However, the State did not seek to revoke Anthony's probation; rather, it merely imprisoned him during what should have been the probationary portion of the 1987 sentence.

Consequently, the manner in which Anthony is being required to serve his sentence is not what the legislature contemplated in Article II, that is, as a "[person] whose liberty is being restrained by virtue of a sentence imposed against them by a state court of record." OCGA § 9-14-41. Thus, the habeas court did not err in its determination that Anthony's petition was properly filed pursuant to OCGA § 9-14-1 (a), which provides:

> [a]ny person restrained of his liberty under any pretext whatsoever, except under sentence of a state court of record, may seek a writ of habeas corpus to inquire into the legality of the restraint.

Accordingly, the court did not err in its refusal to dismiss Anthony's petition for failure to state a claim upon which relief could be granted.

2. The Warden contends that the habeas court erred in considering inadmissible hearsay which it previously excluded from evidence.

The hearsay in question involved Anthony's statement that at the time of his release he was told that he did not have to worry about probation or parole because all of his sentence had been served. The Warden maintains that the habeas court's recitation of this statement in its order evidences that the court relied on the statement in its determination that Anthony was released through no fault of his own. A transcript of the hearing reveals that the habeas court found Anthony's statement to be an exception to the hearsay rule and stated that it would be considered only as an explanation of course of conduct. The habeas court, sitting as factfinder, is presumed to consider only the "legal evidence" in rendering its decision. *Crawford v. Linahan*, 243 Ga. 161, 165 (253 SE2d 171) (1979). The court's finding that Anthony was released through no fault of his own was supported by a 1987 "release order," indicating that the Department of Corrections was to "proceed with release." Thus, the Warden's assertion that the habeas court improperly relied upon hearsay is without merit.

3. The Warden contends that the evidence did not support the habeas court's finding that the "sentence order" on the 1987 theft conviction was not delivered to the appropriate authorities until 1994. But there was evidence to support the finding.

Testimony at the hearing indicated that Anthony was sentenced to serve three years in confinement of a ten-year sentence on July 23, 1987; however, he was released by the Department of Corrections just twelve days later on August 4, 1987. The evidence further established that Anthony was not taken into custody again until 1994, even though he had worked at several jobs in the State of Georgia while he was at liberty. Findings of the habeas court will not be disturbed unless clearly erroneous. *Berryhill*, supra.

4. The Warden contends that requiring Anthony to serve his sentence in installments does not violate Anthony's right to due process under the Fourteenth Amendment. We disagree.

In *White v. Pearlman*, 42 F2d 788 (10th Cir. 1930), it was determined that a prisoner cannot be required to serve his sentence in installments. The court in *White* questioned whether a prisoner required to serve a sentence in installments had a fair "chance to reestablish himself and live down his past." *White*, supra at 789. Ultimately, the court concluded:

> where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty.

Id. In applying the principle enunciated in *White*, it has been recog-

nized that "[a] convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution." *United States v. Merritt*, 478 FSupp. 804, 807 (D.D.C. 1979). Rather, additional factors must be present to afford a convicted person relief:

> the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his reincarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.' "

*Merritt*, supra at 807 (quoting *Piper v. Estelle*, 485 F2d 245, 246 (5th Cir. 1973)).

Finding the principle established in *White* to be both persuasive and in conformity with the due process requirements of the Fourteenth Amendment, we agree that a defendant may not be required to serve a sentence of confinement in installments where his premature release was brought about through no fault of his own, and where reincarceration would be "inconsistent with 'fundamental principles of liberty and justice.' [Cits.]" *Merritt*, supra. Whereas the evidence indicated that Anthony was released with both the Parole Board's and the Department of Corrections' knowledge of his pending theft charge, that the Warden neither alleged nor proved that Anthony violated the terms of his probation while he was at liberty, and because the record is devoid of evidence that the State made any attempt to reacquire custody over Anthony for a period of seven years, we conclude that reincarceration would be "inconsistent with 'fundamental principles of liberty and justice.' [Cits.]" *Merritt*, supra. Accordingly, the habeas court properly determined that to permit the State to assert a right to custody over Anthony would offend the Due Process Clause of the Fourteenth Amendment.

5. Finally, the Warden asserts that the habeas court erroneously ordered the Department of Corrections to release Anthony from confinement because the Department was not made a party to the case. Anthony properly filed the petition against Derrer, as the Warden of the institution in which he is incarcerated. OCGA §§ 9-14-43; 9-14-45; *McBurnett v. Warren*, 208 Ga. 225 (66 SE2d 49) (1951). Because Anthony is in the custody of Warden Derrer, we direct the habeas court to amend the order granting Anthony's petition for writ of habeas corpus to direct Derrer, as Warden of Hall County Correctional Institution, to release Anthony from his custody and control instanter.

*Judgment affirmed and case remanded with direction. All the*

*Justices concur.*

DECIDED NOVEMBER 20, 1995.

*Stewart, Melvin & House, William H. Blalock, Jr.,* for appellant.
*Michelle K. Wunderlich, Michael M. Worth,* for appellee.